# United States Court of Appeals

### *for the*

# Third Circuit

---

Case No. 24-3321

PETER PATAKI,

*Appellant,*

– v. –

WALMART, INC.; WALMART STORES INC.; WAL-MART STORES, INC.;
WAL-MART STORES EAST INC.; WAL-MART STORES I, LP; WALMART
ASSOCIATES, INC.; WALMART STORE NUMBER 5447; JOHN DOE 1-5;
DOE CORPORATION 1-5,

*Appellees.*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

## BRIEF FOR DEFENDANTS-APPELLEES WALMART, INC.;
## WALMART STORES, INC.; WAL-MART STORES, INC.;
## WAL-MART STORES EAST, INC.; WAL-MART STORES
## EAST I, LP; AND WALMART STORE NUMBER 5447

---

PATRICK J. MCDONNELL
ELISA M. BOODY
MCDONNELL & ASSOCIATES P.C.
860 First Avenue, Suite 5B
King of Prussia, Pennsylvania 19406
500 Route 70 West
Cherry Hill, New Jersey 08002
(856) 429-5300

*Attorneys for Defendants-Appellees Walmart, Inc.; Walmart Stores, Inc.;
Wal-Mart Stores, Inc.; Wal-Mart Stores East, Inc.; Wal-Mart Stores East I,
LP; and Walmart Store Number 5447*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1(a) and Third Circuit LAR 26.1, Defendant-Appellee Walmart Inc. is a publicly traded corporation with the ticker symbol WMT.

Further, Defendant Walmart Inc. (misidentified in Plaintiff's Complaint as Walmart, Inc., Walmart Stores, Inc., Wal-Mart Stores, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East I, LP, and Walmart Store Number 5447), has no publicly held parent corporation that holds 10% or more of its stock.  By way of further disclosure, "Walmart Inc." was formerly known as "Wal-Mart Stores, Inc."

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

I.    COUNTER-STATEMENT OF THE ISSUES .................................1

II.   CONCISE STATEMENT OF THE CASE ...................................1

    A.    Facts relevant to the issues submitted for review ................1

        1.    The Incident ................................................1

        2.    Birnbach's Proffered Testimony..........................3

        3.    The Medical Providers' Financial Interests ................5

    B.    Procedural History..............................................7

    C.    Rulings Presented for Review ...................................9

III.  SUMMARY OF ARGUMENT..................................................12

IV.  STANDARD OF REVIEW ....................................................14

V.   ARGUMENT....................................................................15

    A.    The District Court's preclusion of Pataki's liability expert
        was a proper exercise of discretion .....................................15

        1.    Birnbach was unqualified to offer opinions concerning
            retail safety.............................................16

        2.    Birnbach's testimony was unreliable .......................17

        3.    Birnbach's testimony did not fit the disputed issues in
            the case and would not have been helpful ................18

        4.    The district court's exclusion of Birnbach is consistent
            with numerous other courts who have found his
            opinions unhelpful.......................................21

        5.    Birnbach's preclusion did not affect substantial rights
            or the outcome of the case and was cumulative to the
            surveillance video and court's charge.......................22

6. The district court properly limited Birnbach's testimony about an inspection he conducted more than two years after the accident............................................23

B. Pataki waived any objections to Walmart's closing argument, which was fair comment on his medical providers' financial interest in the outcome of the case, and he has no entitlement to plain error review, which would fail in any event ..........................26

1. Pataki's counsel waived any claimed error related to improper comments of counsel..................................................26

2. Pataki has not cited a single case where the Third Circuit has ever reversed a jury verdict based upon alleged claims of attorney misconduct under a plain error standard ..........................................................29

3. Counsel's statements were fair comment on the evidence that did not affect the liability verdict ......................31

VI. CONCLUSION.............................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aloe Coal Co. v. Clark Equip. Co.*,
816 F.2d 110 (3d Cir. 1987) ................................................................16

*Am. Inst. for Chtd. Prop. Cas. Underwriters v. Posner*,
No. 23-3251, 2025 U.S. App. LEXIS 445 (3d Cir. 2025) ...................28

*Ansell v. Green Acres Contracting Co.*,
347 F.3d 515 (3d Cir. 2003) ................................................................24

*Berckeley Inv. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ................................................................18

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*,
300 F.3d 325 (3d Cir. 2002) ................................................................14

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
350 F.3d 316 (3d Cir. 2003) ........................................................ 14, 15

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
286 F.R.D. 266 (W.D. Pa. Aug. 24, 2012) ..........................................17

*Clapper v. Am. Realty Invs. Inc.*,
95 F.4th 309 (5th Cir. 2024) ......................................................... 29, 30

*Cook v. Wal-Mart Stores E., LP*,
No. 1:19-CV-00031,
2020 U.S. Dist. LEXIS 238614 (W.D. Va. Dec. 18, 2020) ................21

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ............................................................................18

*De La Cruz v. V.I. Water & Power Auth.*,
597 F. App'x 83 (3d Cir. 2014) ...........................................................25

*Duchesneau v. Cornell Univ.*,
559 F. App'x 161 (3d Cir. 2014) .........................................................31

*Dunn v. Hovic*,
1 F.3d 1371 (3d Cir. 1993) ........................................................... 27, 28

*Fashauer v. N.J. Transit Rail Operations*,
57 F.3d 1269 (3d Cir. 1995) ................................................................31

*Fisher v. ARC Hous., LLC,*
    No. 04-61389-CIV, 2005 U.S. Dist. LEXIS 45890 (S.D. Fla. Dec. 21, 2005).....24

*Forrest v. Beloit Corp.*,
    424 F.3d 344 (3d Cir. 2005) ...................................................................................29

*GE v. Joiner*,
    522 U.S. 136 (1997).................................................................................................14

*Government of the Virgin Islands v. Mills*,
    821 F.3d 448 (3d Cir. 2016) ........................................................................... 15, 27

*Herman v. Hess Oil V.I. Corp.*,
    524 F.2d 767 (3d Cir. 1975).....................................................................................28

*In re Paoli Railroad Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ......................................................................................17

*In re Paulsboro Derailment Cases*,
    746 F. App'x 94 (3d Cir. 2018) ...............................................................................14

*Janezich v. Walmart, Inc.*,
    No. 21-CV-01808, 2023 U.S. Dist. LEXIS 72894 (D. Colo. Apr. 26, 2023).......21

*Kavanagh v. Refac Optical Grp.*,
    No. 15-4886, 2017 U.S. Dist. LEXIS 205402 (D.N.J. Dec. 14, 2017) ...............26

*King v. Ford Motor Co.*,
    597 F.2d 436 (5th Cir. 1979)...................................................................................25

*Komis v. Sec'y of United States Dept of Lab.*,
    918 F.3d 289 (3d Cir. 2019) ....................................................................................31

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).................................................................................................14

*Langbord v. United States Dep't of the Treasury*,
    832 F.3d 170 (3d Cir. 2016) ....................................................................................15

*Lauria v. Amtrak*,
    145 F.3d 593 (3d Cir. 1998) ....................................................................................18

*Leonard v. Stemtech Int'l, Inc.*,
    834 F.3d 376 (3d Cir. 2016) ........................................................................... 27, 28

*M.S. v. Susquehanna Twp. Sch. Dist.*,
    969 F.3d 120 (3d Cir. 2020) ....................................................................................18

*Masters v. Norfolk S. Ry. Co.*,
   Civil Action, No. 11-834,
   2012 U.S. Dist. LEXIS 14653 (W.D. Pa. Feb. 6, 2012) ........................................24

*Meals v. Port Auth. Trans-Hudson Corp.*,
   622 F. App'x 121 (3d Cir. 2015) ............................................................. 27, 31-32

*Morgan v. Dick's Sporting Goods, Inc.*,
   No. TJS-22-1633, 2024 U.S. Dist. LEXIS 145256 (D. Md. Aug. 14, 2024) .......21

*Murray v. Fairbanks Morse*,
   610 F.2d 149 (3d Cir. 1979) ................................................................. 27, 28

*Nelson v. Costco Wholesale Corp.*,
   No. 21-5666, 2022 U.S. App. LEXIS 2634 (6th Cir. 2022) ................................16

*Puckett v. United States*,
   556 U.S. 129 (2009) .......................................................................................15

*Reed v. Philadelphia, Bethlehem & New England R.R. Co.*,
   939 F.2d 128 (3d Cir. 1991) .........................................................................14

*Salas v. Wang*,
   846 F.2d 897 (3d Cir. 1988) ..................................................................... 14, 22

*Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003) ..................................................................... 15, 18

*Strickland v. Washington*,
   466 U.S. 668 (1984) .......................................................................................35

*Sweigart v. Voyager Trucking Corp.*,
   No. 23-2397, 2024 U.S. App. LEXIS 18609 (3d Cir. 2024) ...............................24

*Tharpe v. Ga. CVS Pharmacy, LLC*,
   No. 1:21-CV-01085,
   2023 U.S. Dist. LEXIS 28814 (N.D. Ga. Feb. 21, 2023) ....................................21

*United States v. Olano*,
   507 U.S. 725 (1993) .......................................................................................15

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998) ..................................................................... 27, 28

*Whittenburg v. Werner Enters. Inc.*,
   561 F.3d 1122 (10th Cir. 2009) .....................................................................30

*Yazujian v. PetSmart,*
  729 F. App'x 213 (3d Cir. 2018) ............................................................................16

**Statutes & Other Authorities:**

Fed. R. Civ. P. 37(e)(2) ............................................................................26

Fed. R. Evid. 103(a) ............................................................................14

Fed. R. Evid. 403 ............................................................................25

Fed. R. Evid. 404(a)(1) ............................................................................24

Fed. R. Evid. 404(b) ............................................................................24

Fed. R. Evid. 404(b)(1) ............................................................................24

Fed. R. Evid. 406 ............................................................................24

Fed. R. Evid. 702 ............................................................................ 1, 15

## I.    COUNTER-STATEMENT OF THE ISSUES

1.    Rule 702 requires an expert to offer specialized opinions that will help the jury determine a fact in issue. Pataki proffered an expert to opine that a Walmart handbook requires employees to pick up any debris that they see on the floor. Did the District Court abuse its discretion in finding that this assertion was not a specialized opinion, was well within the knowledge of the average juror, and could be presented by introducing the handbook?

2.    A party who fails to object to statements of counsel waives that issue for appeal. During the trial, Walmart's counsel elicited evidence and argued in closing that Pataki's counsel directed his medical care to a group of providers who had undisclosed financial interests with each other. In a case where the question of damages was not even reached, and Pataki's counsel did not preserve the issue for appeal, can the court review counsel's statements regarding the credibility of medical providers under the plain error standard?

## II.    CONCISE STATEMENT OF THE CASE

### A. Facts relevant to the issues submitted for review.

### 1.  The Incident

On June 7, 2015, Pataki slipped and fell in a shopping aisle of a Walmart store in Kearny, New Jersey. ECF #205, 73:2-11. Surveillance video captured the accident from a distance and was played at the trial. *Id.* at 76:2-79:3. According to his own

testimony, Pataki shopped for approximately 40 minutes, picked up packaged chicken from a display cooler, and then, at 8:07 p.m., slipped on plastic. *Id.* at 78:17-82:4. He described the plastic as being "eight inch by four inch" and said that it "wasn't really visible." *Id.* at 81:23-82:4.

After he fell, Pataki promptly stood up and the video did not show him bending over to see if anything had caused him to fall or to move any plastic. ECF #206, 232:16-233:7. He left the area for a minute and when he came back, he did not remove or examine anything on the floor. *Id.* at 233:22-234:8. Pataki walked away and then came back minutes later and kicked something into the path of customer traffic. *Id.* at 207:10-19; 234:12-235:15. Pataki then proceeded back to the chicken display, several aisles away from the area of his fall, to investigate what he thought might be a potential electrical problem with that display. *Id.* at 235:16-20; 236:11-25; 240:2-241:1; 243:8-12. Ten minutes later, he made a telephone call while walking around the area. *Id.* at 237:1-11; 238:14-17; 243:13-17; 244:10-21. The surveillance video showed multiple Walmart employees working in the area, but Pataki did not speak to them or let them know that there was plastic on the floor. *Id.* at 237:12-238:11. More than ten minutes after the accident, Pataki spoke with a witness named Betty Gardner and was seen walking around normally, looking down at his cell phone and moving his neck without any observable evidence of pain. *Id.* at 244:2-245:7.

## 2.  Birnbach's Proffered Testimony

Pataki's proposed liability expert, Jerry Birnbach, testified in a *de bene esse* trial deposition and was proffered as an expert in "store design, display design, and as a retail safety expert." SA15, 15:18-21. Birnbach is not a registered architect, having failed the licensing examination twice. SA16, 16:19-25. Because he is neither a licensed architect nor engineer, he cannot submit store or structural plans for municipal approval unless a licensed professional signs them. SA18, 18:11-23. Birnbach's retail experience essentially consists of designing internal vendor product displays, which do not require any professional qualifications. SA20-21, 20:1-21:13. He agreed, after some initial equivocation, that he would not be offering any opinion that the displays were defective. SA35-35, 35:5-36:7; SA52-57, 55:22-57:7; SA62, 62:11-16; SA209, 209:1-16. The only safety training listed on his Curriculum Vitae consisted of a three-hour course in ice management and sidewalk safety offered by the "Accredited Snow Contractors Association." SA22-24, 22:19-24:3. Birnbach is not a licensed contractor or building inspector in any state and has no relevant code enforcement experience. SA24-27, 24:22-27:2. Birnbach holds no professional certifications. SA27-28, 27:24-28:8.

Birnbach likewise has no education in retail management or experience managing retail employees. SA28-30, 28:9-30:16. The last time he worked in a retail store was when he was a teenager at a Lord & Taylor store. SA31, 31:11-14.

Birnbach has never managed a large supercenter like the Walmart at issue and conceded that every manager present on the evening in question has more experience "in management" than he. SA31-32, 31:15-32:9.

Birnbach did not know how the plastic came to be on the floor; SA63, 63:2-6; or whether it was plastic wrap or a small bag. SA207-208, 207:18-208:25. With respect to industry standards, Birnbach testified that Walmart's corporate policies met the standard of care and are "exceptional." SA50-51, 50:17-51:1. He also agreed that his opinion essentially consisted of the proposition that "Walmart employees should have inspected and picked up the plastic." SA51, 51:2-9. And, that they should "look around and if they see something on the floor, they pick it up." SA52, 52:8-13. Birnbach acknowledged that this proposition is easily understood. SA51-52, 51:25-52:7. He testified that Walmart's handbook educates its employees to pick up items they see on the ground. SA51, 51:10-15.

Birnbach had no criticism of the handbook itself or the policy. SA115-116, 115:16-116:1. Birnbach then qualified whether the policy applied in this case since it "depends upon whether that employee saw the plastic." SA116-117, 116:21-117:9. He admitted that it did not include specialized or technical knowledge and was written in plain English so that employees could understand it. SA229-232, 229:25-232:3.

Birnbach also conceded that he had no additional insight into what was seen on the surveillance cameras because he did not know where they were pointed at the time of the incident. SA53-54, 53:9-54:7. He agreed that he "looked at the video and . . . [intends] to tell the jury what [he] sees in the video." SA55, 55:10-13. While Birnbach acknowledged that it was the district court's obligation to advise the jury about the law applicable to the case, he intended to opine that Walmart's duty "goes beyond the law." SA59, 59:11-17.

### 3.  The Medical Providers' Financial Interests

Pataki presented only one medical witness, Jerald Vizzone, DO, an osteopath and friend of his attorney. ECF #206, 273:3-7; 286:1-287:2. Pataki's attorney had a "significant relationship" with Dr. Vizzone and sent Pataki to see him for treatment. *Id.* at 224:18-21; 385:8-14. In describing how he travelled from Brooklyn to New Jersey three days a week for medical treatment, Pataki first testified that he took a cab, or his lawyer provided transportation. ECF #205, 110:15-22. Pataki then admitted that his original lawyer directed his medical care and provided courtesy vans from Brooklyn, NY to a network of New Jersey doctors. ECF #206, 252:8-254:9. He travelled to New Jersey at least 100 times for medical and surgical treatment, and each time his lawyer provided transportation and guaranteed the bills. *Id.* at 221:25-222:13; 228:3-229:10. This was inconsistent with deposition testimony where Pataki claimed that his girlfriend at the time drove him to treatment. *Id.* at

263:3-21; 265:16-25; 267:23-268:7. Pataki admitted that he mentioned nothing about the courtesy vans during his deposition. *Id.* at 268:11-269:7. Dr. Vizzone then testified that he likely provided the courtesy vans to bring Pataki from Brooklyn to the doctors, at least to his office. *Id.* at 382:24-383:13.

Dr. Vizzone admitted that he had business relationships with two other partners, John Mercadante and Dr. Edwin Gangemi. *Id.* at 339:14-340:2. Collectively, they had either common ownership or financial interests with all the facilities where Pataki treated, including the orthopedic medical practice, the surgical center, the rehabilitation and physical therapy facility, MRI center, and the Urgent Care facility. *Id.* at 348:8-350:19. Dr. Vizzone testified that he was an owner and had a financial interest in the Orthopedic and Spine Institute of New Jersey, the surgical center where Pataki received his surgeries. *Id.* at 366:5-25. He also admitted that he and Mercadante owned the Urgent Care Center that provided care to Pataki. *Id.* at 367:9-17. He further conceded that his partner Mercadante also owned the MRI center where Pataki received MRIs. *Id.* at 369:1-3. Dr. Vizzone testified that his other partner, Dr. Gangemi, owned New Jersey Rehab where Pataki received most of his physical therapy and chiropractic treatment. *Id.* at 353:24-354:8. In addition to his financial interests with the other medical providers, Dr. Vizzone admitted that he had an interest in the outcome of the case in the form of a lien on the case for repayment of the medical bills. *Id.* at 367:23-369:22.

Dr. Vizzone's network generated medical bills to Pataki's attorney totaling $1,213,531, which a defense expert valued, using usual, customary, and reasonable ("UCR") schedules, at $218,140. A.66. Pataki's billing expert, Jeffrey Liva, reduced the bills similarly. ECF #78-5. At trial, Dr. Vizzone claimed that he could not testify about the amount of the bills, ECF #206, 338:1-13, or even confirm his fee for testifying. *Id.* at 385:4-7. During his testimony, Dr. Vizzone failed to lay a proper foundation for any bills other than his own. *Id.* at 395:21-396:6; 398:6-399:16; ECF #207, 438:23-443:7. After Dr. Vizzone testified, the district court reviewed Dr. Liva's report and found that there was no medical testimony about whether most of the treatment was necessary or causally related. *Id.* at 438:25-443:7. Pataki decided to forgo presenting his medical billing expert or attempting to introduce the bills in lieu of an agreed upon stipulation that $38,500 was the amount of past medical bills. *Id.* at 435:9-16, A1502. Pataki also elected to present no evidence of future medical bills.

## B. Procedural History

Walmart moved *in limine* to exclude Birnbach. A95. After briefing and argument, the district court granted Walmart's motion in part, and limited Birnbach from testifying about conditions at the store more than two years after the accident. A1363-1365. Less than a week before trial, Pataki took the videotaped trial deposition (*de bene esse*) of Birnbach, the transcript of which he submitted to the

district court for review of objections on the eve of the third day of trial. ECF #207, 420:15-422:9. After reviewing Birnbach's transcript, which included Walmart's renewed oral motion to preclude his testimony entirely, the district court precluded Pataki from presenting the testimony to the jury because it was not expert opinion. *Id.* at 420:15-422:9; 427:11-428:17; 443:18-446:19.

After the close of evidence, the parties presented closing arguments. Pataki's counsel neither objected to Walmart's closing nor requested any curative instruction; instead, he asked for "leeway to give a response." ECF #208, 543:17-23. Walmart did request curative instructions after Pataki's closing because his counsel improperly argued an entitlement to damages for future medical bills, suggested that Walmart had a burden to call witnesses to disprove negligence, that the jury should consider Walmart's size and resources, and that the jurors should assume Walmart spoliated video evidence; and the district court modified existing instructions or gave those specific requested instructions. *Id.* at 587:15-588:4; 588:22-596:5. The district court then charged the jury.

After Pataki initially rested, Walmart reserved the right to present a Rule 50 motion for judgment as a matter of law, and presented such a motion after the court's charge. ECF #208, 630:23-634:4. Pataki rested without making a motion for judgment at the close of his evidence. *Id.* at 495:11. After deliberating, the jury rendered a verdict and unanimously answered "No" to Question No. 1, which asked:

"Do you find that the Plaintiff Peter Pataki has proven by a preponderance of the evidence that Defendant Walmart was negligent on June 7, 2015?" *Id.* at 636:21-637:25. Accordingly, the district court entered judgment in Walmart's favor based upon the jury's verdict. Pataki failed to file any post-trial motions, and this appeal ensued.

### C. Rulings Presented for Review.

After an initial motion and hearing, the district court properly limited the scope of Birnbach's testimony and precluded him from testifying about conditions and photographs he took two years after the incident. A1363-64. Because Birnbach had not been deposed, the district court's preliminary ruling was based only on his report. ECF #207, 420:21-421:3. The district court preliminarily precluded Birnbach from referencing photographs or his observations from the post incident inspection because there was no reasonable inference that any jury could draw that the conditions years after the incident were similar. A1363. After reviewing the report, the district court noted that it was unclear that Birnbach really add[ed] a tremendous amount to the case. A1364. The district court further noted that what Birnbach would be on a "short leash" at trial and that the value of any testimony would be "pretty limited" since he did not do any testing of the coefficient of friction of the floor. A1365. Therefore, the district court preliminarily ruled that Birnbach could

potentially offer an opinion concerning "industry standards for maintaining and inspecting a large-volume retail store." A1365.

On the eve of the third day of the trial, Pataki presented the district court with Birnbach's transcript for rulings on objections. ECF #207, 420:15-422:9. After reviewing the transcript, the district court ruled that Birnbach did not proffer any testimony that would be permitted under its preliminary ruling and that there was nothing in that transcript that constituted a valid expert opinion. *Id.* at 421:23-422:9. Nonetheless, the district court entertained additional argument where Pataki argued that Birnbach's opinion qualified as expert testimony because he used the words: "reasonable degree of certainty." *Id.* at 426:22-428:17. After permitting the defense to proceed with certain medical testimony out of turn before Pataki formally rested, the district court explained that its initial ruling granting Walmart's motion *in limine* in part was based upon the report and not a deposition. *Id.* at 444:18-445:2. After reading the deposition, the court ruled:

> THE COURT: . . . [Birnbach] didn't give any testimony about industry standards. He gave no testimony about, for example, somebody like Walmart should have a particular person, you know, industry requires, whose job is to scour the store and the aisles at least once an hour and they didn't do that; or keep a log that shows that they inspected the aisles and they didn't do that. There's just no testimony. There's no opinions. He merely gives his opinions as to what he sees in the video, which any juror can determine by simply looking at the video, which we've all seen multiple times, and his testimony was essentially, I see Mr. Pataki. I see what looks like plastic on the floor. I see him

walk around. It's what we've been talking about with every witness. In fact, you went through it ad nauseam with not only Mr. Pataki, both of you, but also Ms. Gardner about what was in the video. It's just simply not the type of testimony from an expert that is admissible. He doesn't meet any of the foundational requirements with respect to providing a jury with scientific or any opinions or knowledge beyond the scope of an average juror.

So for that reason, I think it's entirely inadmissible.

*Id.* at 444:7-445:2. Following additional argument, the district court supplemented the ruling and stated that "[Birnbach] gave an opinion that if a Walmart employee sees something, they should pick it up right away. I'm essentially going to tell the jury that in the jury instruction that talks about notice and constructive notice. It doesn't require, in my opinion, an expert opinion." *Id.* at 446:5-10.  The district court also found that the Walmart handbook or policy could be read to the jury and that an expert was not required because there was "nothing technical or special about it." *Id.* at 446:16-18.

Pataki asserted no objections about attorney misconduct during the trial, and made no objections to Walmart's opening or closing; therefore, there is no district court ruling preserved for review.  ECF #205, 50:10-64:10 (no objection during or request for sidebar after defense opening); ECF #208, 543:17-23 ("Mr. McDonnell is doing his job but . . . I just be allowed to be given the leeway to give a response."). The district court charged the jury that evidence did not include: "[s]tatements,

arguments or questions of lawyers for the parties in the case." *Id.* at 601:14-16.  All issues related to the counsels' statements are waived.

## III.    SUMMARY OF ARGUMENT

The district court properly exercised its discretion in excluding a putative expert from offering the commonsense opinion that retail workers should pick up debris they see while working.  At the time the district court excluded this proffered testimony, it had the benefit of reviewing the putative expert's full trial deposition and could see that he failed to offer specialized knowledge that would be helpful to the jury in resolving disputed issues in the case. Although Pataki argues that Birnbach's preclusion prevented him from introducing evidence that "Walmart breached the safety standards that apply to large retailers," this ignores Birnbach's own assertion that Walmart's handbook was the standard. The district court specifically invited Pataki to introduce the handbook, but he elected not to do so.

The district court properly instructed the jury that Walmart had the duty to make reasonable inspections of the premises and to correct any unsafe conditions which it knew about or should have known. Birnbach's testimony offered no opinion about what type of inspections should be made, how often they should be made, or what type of employees should make them. Instead, he simply stated that all employees should immediately pick up any debris they see on the ground. The district court properly ruled that this was not expert opinion.

During the trial, Pataki testified that his original attorney immediately directed him to his medical providers, guaranteed their bills, and provided courtesy van transportation to and from their offices in Northern New Jersey to his home in Brooklyn, NY. This was inconsistent with Pataki's deposition testimony where he swore that his girlfriend transported him to his medical appointments. Pataki's sole medical witness, Dr. Vizzone, testified that he owned or had financial relationships with all of the principals of Pataki's medical providers and facilities, including the orthopedic practice, MRI facility, surgical center, rehabilitation/chiropractic center, and the urgent care facility. Dr. Vizzone further testified that he was a personal friend of Pataki's attorney, likely participated in the courtesy van arrangement and that he had a financial interest in the outcome of the case through a lien on the case proceeds.

In closing, Walmart's counsel pointed out that there was no medical treatment or evaluation outside of Dr. Vizzone's group of financially connected partners, all of whom had a financial interest in the outcome of the case. In context, the term "ring" was fair comment on an attorney directing and transporting Pataki from an outer NYC borough to a group of New Jersey medical providers who all had a common financial interest with each other and the outcome of the case. Pataki's counsel failed to object to any of Walmart's closing, which constitutes a waiver of any alleged error. Pataki likewise made no request for a curative instruction.  Instead, Pataki's attorney argued in his closing that he had no choice but to participate in this type of "ring"

arrangement because he was "David" attempting to combat the Walmart "Goliath" and its "fancy lawyers." Because Walmart's comments related to the credibility of a damages witness, and the jury never reached the issue of damages, any purported error was harmless.

## IV.    STANDARD OF REVIEW

This Court reviews a district court's decision to admit or exclude expert testimony for abuse of discretion. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320 (3d Cir. 2003) (citing *GE v. Joiner*, 522 U.S. 136, 138-39 (1997)); *In re Paulsboro Derailment Cases*, 746 F. App'x 94, 97-98 (3d Cir. 2018). The abuse-of-discretion standard likewise applies to "the trial court's decisions about how to determine reliability" of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 329 (3d Cir. 2002). An erroneous evidentiary ruling will constitute reversible error only when "'a substantial right of a party is affected.'" *Salas v. Wang*, 846 F.2d 897, 907 (3d Cir. 1988) (quoting Fed. R. Evid. 103(a)). The court must decide if the error affected the outcome of the case. *See Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 134 (3d Cir. 1991).

Pataki did not object during Walmart's closing, waived any claim of error and is not entitled to a plain error review. Although "plain error" review of civil closings is not available, in criminal cases "plain error" review is a two-part

analysis involving identification of an obvious error, coupled with a finding of fundamental unfairness. *Government of the Virgin Islands v. Mills*, 821 F.3d 448, 465 (3d Cir. 2016) (citations omitted). Evidence of an error, in and of itself, is insufficient to warrant reversal. The appellant must also demonstrate that any alleged attorney misconduct impacted his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (listing the elements required to find plain error, including a deviation from a legal rule that is obvious and affected the trial outcome) (citing *United States* v. *Olano*, 507 U.S. 725 (1993)). Notably, any remedy based on plain error is discretionary. *Puckett*, *supra* at 135.

## V.    ARGUMENT

### A. The District Court's preclusion of Pataki's liability expert was a proper exercise of discretion.

As noted above, this Court reviews a district court's decision to admit or exclude expert testimony for abuse of discretion. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320 (3d Cir. 2003).

The Third Circuit has interpreted Fed. R. Evid. 702 to impose a trilogy of restrictions on expert testimony: qualification, reliability, and fit. *Langbord v. United States Dep't of the Treasury*, 832 F.3d 170, 194 (3d Cir. 2016); *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The district court's opinion that Birnbach did not offer "scientific or any opinions or knowledge beyond the scope of an average juror," primarily implicates the restrictions on reliability and fit. Birnbach testified in a trial

15

deposition, so the ruling followed a review of his entire testimony. After reviewing the proposed testimony, the district court properly ruled that his opinions were neither reliable nor fit. ECF #207, 420:15-422:9; 427:11-428:17; 443:18-446:19. Moreover, considering that Birnbach was attempting to opine on retail management rather than his expertise as a display designer, he was also unqualified.

### 1. Birnbach was unqualified to offer opinions concerning retail safety.

"An expert witness must have such skill, knowledge, or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth." *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987). This Court does not hesitate to affirm district courts who properly exclude unqualified retail safety experts. For example, in *Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018), a Third Circuit panel determined that a proffered expert with no academic background in retail safety, no formal training in retail management or safety, and no recent retail work experience other than a job as clerk was unqualified to offer an opinion on the subject of retail safety. Birnbach's qualifications are essentially the same and have been found to be similarly lacking. *See e.g.*, *Nelson v. Costco Wholesale Corp.*, No. 21-5666, 2022 U.S. App. LEXIS 2634, *8 (6th Cir. 2022) (finding Birnbach unqualified to offer certain opinions).

Birnbach is not a licensed professional in any field. SA24-27, 24:22-27:2. Aside from reviewing Walmart's associate handbook and the store video, which

does not require any technical or specialized skill, he offered no education, training, or experience that was relevant to the issues in this case. SA51, 51:10-15.

### 2. Birnbach's testimony was unreliable.

Relevant factors to determine whether an expert's opinion is reliable include "whether a method consists of a testable hypothesis" and "the existence and maintenance of standards controlling the technique's operation." *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994). "[W]here an expert is proffered to testify regarding non-scientific matters, '[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience' of the witness and the methodology used will be applying that experience to the facts of the case." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 269-70 (W.D. Pa. Aug. 24, 2012).

Birnbach's ultimate opinion was nothing more than the proposition that retail employees should pick up trash they see while they are working. SA108-109, 108:11-109:18; *see also* SA113, 113:8-9 ("An employee, when they see debris on the floor, is required to pick it up."). This is not a proper subject for expert testimony. To add to the unreliable nature of Birnbach's opinion, he qualifies that duty as it "depends on whether that employee saw the plastic." SA117, 117:8-9. He admitted that he did not have any knowledge about how the plastic came to be on the floor. SA63, 63:2-5. Looking at a surveillance video to make a subjective determination

that an employee saw plastic or should have seen plastic are well within the ordinary observational powers of jurors.

### 3. Birnbach's testimony did not fit the disputed issues in the case and would not have been helpful.

A district court possesses broad discretion to determine whether an expert's testimony will be helpful to a jury. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). The Third Circuit particularly cautions against permitting expert testimony that would usurp the district court's pivotal role in explaining the law to the jury. *Id. See also, M.S. v. Susquehanna Twp. Sch. Dist.,* 969 F.3d 120, 129 (3d Cir. 2020) ("an expert cannot testify to the legal conclusion of whether appropriate people had actual knowledge."). Birnbach violated this rule and suggested that Walmart was required to meet a legal standard greater than the instructions the district court would provide the jury. SA59, 59:11-21 ("Well, I think it goes beyond the law."). With respect to the "fit" prong, the expert testimony must "aid the jury in resolving a factual dispute." *Lauria v. Amtrak*, 145 F.3d 593, 599 (3d Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). The "testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404.

Throughout the examination, Pataki's counsel attempted to obscure the commonsense nature of Birnbach's opinion with leading prefaces such as this:

Q.    Mr. Birnbach, through the pedigree that you described earlier about your experience reading Walmart material, and having worked with Walmart, and the other pedigree that you had described earlier, in reviewing the Walmart materials, did you get a basis of understanding what a Walmart employee should do if they ever saw a piece of debris just hanging out on the ground at 8:04:51 seconds at Walmart?

[Objection omitted]

A.    The Walmart employee, according to the Walmart handbook, which is given to new -- new -- all new employees, requires that the Walmart associate picks up any debris that they see on the floor in their travel throughout the store.

SA108-109, 108:11-109:12. Despite the pretentious nature of the question, the substance of Birnbach's testimony was still basic knowledge. SA113, 113:8-9. ("An employee, when they see debris on the floor, is required to pick it up."). As the district court properly ruled, "the only things he gives opinions on that I see are, what should Walmart have done? Pick up plastic. That's not expert testimony, it's just not." ECF #207, 427:18-20. The district court further advised Pataki that he was free to introduce or read the Walmart handbook and policies to the jury and that an expert was not required to introduce its contents. *Id.* at 428:13-17; 446:14-18. Pataki failed to do so.

Pataki suggests that Birnbach's testimony was necessary to educate the jury about retail industry inspection protocols and schedules. *Appellant's Brief* at p. 22 ("how often and in what manner a large retailer like Walmart must inspect for hazards? Is it once a day? Once an hour? Once every 15 minutes?").  In response to

an argumentative question purporting to request industry inspection standards, Birnbach simply said that employees should pick things up when they see them:

> Q.    According to your knowledge of the Walmart manual, what is the interval of time that Walmart states that, upon seeing something like a piece of plastic on the ground, that you should pick it up? Should it be a minute? Should it be an hour? Should it be something else? Tell the jury.
>                 [Objection Omitted]
> A.    The Walmart mandate calls for immediate response.

SA116, 116:6-20. And even that mandate "depends upon whether that employee saw the plastic." SA117, 117:5-9. Birnbach never testified that the industry standard (or even Walmart's manual) required inspections with any particular frequency.

Both sides presented portions of the video, which showed employees continuously working in the area, and the jury was given the entire surveillance video to review during deliberations on their own individual iPads. ECF #208, 481:20; 489:17-490:18; 496:15-23. They were free to determine whether the plastic on the ground was a hazardous condition and whether a particular employee working in the area should have discovered and corrected it. The district court expressly invited Pataki to introduce the Walmart manual. ECF #207, 446:14-16 ("the handbook can be read"); 428:15-17 ("if you want to put in the Walmart policies and procedures, I am sure that . . . we can discuss it."). Pataki did not attempt to introduce the handbook or discuss any alternative method for introducing Walmart's policies.

### 4. The district court's exclusion of Birnbach is consistent with numerous other courts who have found his opinions unhelpful.

Birnbach's opinions have been repeatedly precluded and limited in numerous federal cases because he simply opines on matters of common knowledge. *Morgan v. Dick's Sporting Goods, Inc.*, No. TJS-22-1633, 2024 U.S. Dist. LEXIS 145256, *15 (D. Md. Aug. 14, 2024) (Birnbach's opinion that signs should not fall on customers' heads while they are shopping in a store matter of common knowledge); *Cook v. Wal-Mart Stores E., LP*, No. 1:19-CV-00031, 2020 U.S. Dist. LEXIS 238614, 2020 WL 7481781, *9 (W.D. Va. Dec. 18, 2020) ("I will exclude Birnbach's testimony because 'it concerns matters within the everyday knowledge and experience of a lay juror.'"); *Janezich v. Walmart, Inc.*, No. 21-CV-01808, 2023 U.S. Dist. LEXIS 72894, 2023 WL 3096812, *14 (D. Colo. Apr. 26, 2023) (excluding Birnbach's opinions because they did not require specialized knowledge and were opinions a layperson could form, and would thus not be helpful to a jury).

Birnbach's opinions have also been excluded when he attempts to simply state legal conclusions that intrude upon a district court's responsibility to instruct the jury about the applicable law. *Janezich, supra* at *9 (Birnbach's causation opinions are legal conclusions that must be precluded.); *Tharpe v. Ga. CVS Pharmacy, LLC*, No. 1:21-CV-01085, 2023 U.S. Dist. LEXIS 28814, *10 (N.D. Ga. Feb. 21, 2023) (Birnbach states a "legal conclusion on which expert testimony is both inappropriate and unnecessary.")

During his testimony, Birnbach made repeated statements suggesting that Walmart would be strictly liable for any debris on the sales floor. SA121-122, 121:22-122:8 ("no, plastic wrap should not be on the ground."). A significant part of Birnbach's testimony was simply narrating and editorializing still images from the surveillance video and claiming that a Walmart employee in the still should have picked up the plastic. SA101-106, 101:18-106:2. ("Because there is debris on the floor and it should be picked up by a Walmart employee.").

### 5. Birnbach's preclusion did not affect substantial rights or the outcome of the case and was cumulative to the surveillance video and court's charge.

The preclusion of Birnbach's testimony did not affect Pataki's substantial rights or the outcome of the case. *Salas v. Wang*, 846 F.2d at 907.  The proposed testimony was cumulative to the surveillance video, which in the language of the district court, was played to the jury *ad nauseum*. ECF #207, 444:7-21. The district court correctly noted that it would be charging the jury about Walmart's duty to maintain the store. *Id.* at 428:6-12; 446:8-9 ("I'm essentially going to tell the jury that in the jury instruction that talks about notice and constructive notice."). In its charge, the district court instructed the jury that Walmart had the duty, as an occupier of a premises to "make reasonable inspection of the property to discover hazardous conditions." ECF #208, 610:4-8. The district court stated further that the operator of a supermarket like Walmart had a "duty to exercise reasonable care for the safety of

its customers." *Id.* at 610:10-15. And to "see to it that the premises are in reasonably safe condition for use of its customers." *Id.* The district court also explained the concepts of actual and constructive notice, which includes the duty of correcting any defects an employee sees or should have seen. *Id.* at 611:2-18. Both before and after Pataki rested, the district court reminded him that it did not preclude him from calling Walmart witnesses or introducing handbooks or policies. *Id.* at 590:1-6. If Pataki believed that Walmart's policies (or handbook) were important to his proofs, then he was not precluded in any way from presenting evidence that Walmart requires its employees to pick up any debris they see on the floor while they were working. *Id.*

**6. The district court properly limited Birnbach's testimony about an inspection he conducted more than two years after the accident.**

Appellant appears to claim error based upon the district court's initial refusal to permit Birnbach to offer opinions about the conditions of an inspection he performed two years after the incident. *Appellant's Brief* at pp. 20-21. In Pataki's opposition to Walmart's motion *in limine* submitted to the trial court, he argued: "[Birnbach's post-accident observations] . . . during his site inspection: . . . [of various transitory defects] can all lead the jury to draw an inference that Walmart has a practice of failing to adhere to its own company policies for safety, which is a key factual issue in this case." ECF #140, p. 3. Essentially, Birnbach intended to testify, based upon an inspection of the store more than two years later, that Walmart has a propensity towards negligence, which should then be applied to the conditions

at the time of the incident. This type of bad character or propensity evidence is inadmissible. *See* Fed. R. E. 404(a)(1) and (b)(1). *See also*, *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003) (Rule 404(b) prohibits the admission of "other acts" evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner).

For example, this Court recently affirmed the exclusion of videos demonstrating that a party engaged in reckless acts on other occasions to show a pattern of recklessness. *Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 U.S. App. LEXIS 18609, *20 (3d Cir. 2024). Likewise, Birnbach's selected snapshots of subsequent transitory conditions on one occasion more than two years later cannot be introduced as habit evidence under Fed. R.E. 406. *Sweigart, supra* at *20-21.

Birnbach's post incident photographs also lacked foundation. Pataki cites to no testimony from a witness with knowledge to state that the photographs fairly and accurately represented the conditions at the time of the incident. *See*, *e.g.*, *Masters v. Norfolk S. Ry. Co.*, Civil Action No. 11-834, 2012 U.S. Dist. LEXIS 14653, *7 (W.D. Pa. Feb. 6, 2012) ("neither side has met its burden of showing that the site has remained substantially unchanged."); *Fisher v. ARC Hous., LLC*, No. 04-61389-CIV, 2005 U.S. Dist. LEXIS 45890, *4 (S.D. Fla. Dec. 21, 2005)("The primary legal

issue is whether or not the pictures accurately reflect the scene as it appeared on the date of the accident.").

Under Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" and demonstrative photographs sometimes fall subject to this ban when they contain significant variations from the date, scene, or subject in issue. *De La Cruz v. V.I. Water & Power Auth.*, 597 Fed. Appx. 83, 89-90 (3d. Cir. 2014). *See also*, *King v. Ford Motor Co*., 597 F.2d 436, 445 (5th Cir. 1979). In *De La Cruz*, the Third Circuit affirmed the exclusion of photographs which depicted "different painters, painting a different building, on a different day." *Id.* In this case, there was no evidence that the same managers and associates were working at the time of Birnbach's post incident inspection or that the conditions two years later were the same or substantially similar as the incident.

Likewise, Pataki's contention that Birnbach should have been permitted to testify about spoliation of digital surveillance images was not raised at any time in pretrial motions or at trial. *Appellant's Brief* at pp. 39-42. There is no evidence that Birnbach had any basis, from a visual inspection at the sales floor level, what cameras were pointing in what direction or whether they were working or recording at the time. SA53-54, 53:9-54:7. He admitted that he does not know what direction

25

the cameras were pointing and had not reviewed the camera diagram. *Id.* Had Pataki wanted to assert spoliation of digital images that could be characterized as Electronically Stored Information ("ESI"), which he never argued, then Fed. R. Civ. P. 37(e)(2) provides the exclusive basis for imposing such sanctions. *See e.g.*, *Kavanagh v. Refac Optical Grp.*, No. 15-4886, 2017 U.S. Dist. LEXIS 205402, *5 (D.N.J. Dec. 14, 2017) (In order to prove that spoliation occurred defendants must prove that ESI was "lost."). At no time during trial did Pataki request the opportunity to call a Walmart witness with knowledge of the store's surveillance system to establish that other cameras could have captured the incident; and the district court did not preclude Pataki from attempting to elicit any evidence on this issue either in pretrial motion practice or at the time of trial. Pataki certainly never filed a motion under Rule 37(e)(2) to establish that Walmart willfully or intentionally deprived him of the benefit of ESI in anticipation of litigation.

**B. Pataki waived any objections to Walmart's closing argument, which was fair comment on his medical providers' financial interest in the outcome of the case, and he has no entitlement to plain error review, which would fail in any event.**

**1. Pataki's counsel waived any claimed error related to improper comments of counsel.**

Pataki concedes that he failed to object to any of Walmart's trial arguments or request a curative instruction. The district court properly instructed the jury that the attorneys' statements, arguments, and questions were not evidence. ECF #208,

601:14-16. In civil cases, the Third Circuit imposes the rule that "a party who fails to object to errors at trial waives the right to complain about them following trial." *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998); *See also Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (declining to apply "plain error" review and holding that "counsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks.").

Because Pataki failed to object to any statements within Walmart's opening or closing statements, he argues that they can be reviewed under the plain error standard. *Appellant's Brief* at p. 15. (citing *Government of the Virgin Islands v. Mills*, 821 F.3d 448, 456 (3d Cir. 2016)). In *Mills*, this Court determined that the Fifth Amendment due process clause guarantees the right of an accused to a fair trial, which includes appellate review under the plain error standard of unobjected prosecutorial misconduct. *Id.* This standard has nothing to do with civil cases where the failure to specifically object to improper statements waives the issue. *Dunn v. Hovic*, 1 F.3d 1371, 1377 (3d Cir. 1993). *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 399, n.23 (3d Cir. 2016) (quoting *Dunn, supra). See also, Meals v. Port Auth. Trans-Hudson Corp.*, 622 F. App'x 121, 127 (3d Cir. 2015). In this case, Pataki never even raised this issue in the context of a motion for new trial though "the trial judge is in a better position than an appellate court to determine whether remarks of counsel are prejudicial." *Dunn, supra* at 1377.

Likewise, Pataki's reliance upon *Herman v. Hess Oil V.I. Corp.*, 524 F.2d 767 (3d Cir. 1975) is misplaced. *Herman* did not hold that plain error review of closing statements is available in civil cases – only that the prejudicial remarks in that case did not "constitute reversible error in the absence of any objection or request for a cautionary instruction." 524 F.2d at 772. If there was any uncertainty created by *Herman's* 1975 dicta, then the Third Circuit dispelled it in *Murray v. Fairbanks*, which specifically held: "Counsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks. (citation omitted) **We decline to review the matter as plain error**." 610 F.2d at 152. (emphasis added). Third Circuit Courts have consistently followed that rule. *See*, *e.g.*, *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d at 399, n.23 (3d Cir. 2016); *Waldorf v. Shuta*, 142 F.3d at 629; *Dunn v. Hovic*, 1 F.3d at 1377.

More recently, a panel of this Court restated the rule that the failure to contemporaneously object to counsel's statement forfeits any argument that such statement was improper. *Am. Inst. for Chtd. Prop. Cas. Underwriters v. Posner*, No. 23-3251, 2025 U.S. App. LEXIS 445, *11 (3d Cir. 2025) (citing *Murray*, 610 F.2d at 152). Absent an objection or request for a curative instruction, any claimed errors related to counsel statements in civil cases are waived; and not reviewed under the "plain error" standard.

**2. Pataki has not cited a single case where the Third Circuit has ever reversed a jury verdict based upon alleged claims of attorney misconduct under a plain error standard.**

Pataki cites other inapplicable cases, none of which involve a plain error review in the civil context, and none of which actually resulted in reversal or remand. First, Appellant cites *Forrest v. Beloit Corp.*, 424 F.3d 344 (3d Cir. 2005) where this Court exercised a "deferential review" of the "trial court's decisions" to remedy any alleged attorney misconduct. *Id.* at 351. Applying the abuse of discretion standard, the *Forrest* court reviewed a district court's denial of a requested curative instruction and its refusal to entertain any more objections during closing arguments, which led to additional improper arguments. *Id.* And, even in that context, this Court found no grounds to grant a new trial based upon purported attorney misconduct. *Id.* Unlike *Forrest*, which apparently involved so many objections during closings to warrant an admonishment, Pataki's counsel never objected to any purported misconduct, either in openings or closings.

Pataki also cites two unrelated cases where federal appellate courts reversed district court rulings based upon extreme attorney misconduct, both cases addressing preserved error under an *abuse of discretion* standard. In *Clapper v. Am. Realty Invs. Inc.,* 95 F.4th 309, 315-317 (5th Cir. 2024), the Fifth Circuit reversed for a new trial due to unconscionable, personal attacks against the plaintiff's attorney and expert at trial, including that the attorney was an "embarrassment to the profession" and "low

class," and that the expert was a "paid prostitute" who was "deceitful and deceptive." Notably, in that case, there were two curative instructions, sidebar conferences to address improper remarks, and a motion for a new trial, all of which were reviewed under an abuse of discretion standard. *Clapper,* 95 F.4th at 316, n.2.

In *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1127 (10th Cir. 2009), the Tenth Circuit reversed where plaintiff's counsel used an imaginary letter to the plaintiff's children during closing argument, which prompted two objections, the latter of which was a continuing objection, both of which the trial court overruled. ("Because the allegedly improper statements were objected to, the district court's decision to overrule defendants' objection and permit the argument will not be disturbed absent a clear abuse of discretion."). The imaginary letter asked the "jury to place themselves in the shoes of the children," an explicit *Golden Rule* violation, and also included vicious personal attacks against opposing counsel. *Id.* at 1129-1131 ("Far from coming in passing, they were the heart and soul [of] the argument. Their sheer quantity and acrimony cannot be shrugged off [. . . .]"). Both *Clapper* and *Whittenburg* are examples of egregious attorney misconduct that prompted multiple objections and requests for curative instructions, which resulted in district court rulings that could be reviewed on appeal. None of the cases cited in Appellant's brief support his requested relief, and he waived all issues raised in Point 2.

### 3. Counsel's statements were fair comment on the evidence that did not affect the liability verdict.

Moreover, the jury found no liability. An error in a civil case is harmless "if it is highly probable that the error did not contribute to the judgment." *Komis v. Sec'y of United States Dept of Lab.*, 918 F.3d 289, 297 (3d Cir. 2019) (*overruled on other grounds*). *See also, Duchesneau v. Cornell Univ.*, 559 F. App'x 161, 164 (3d Cir. 2014). The jury found that Walmart was not negligent and answered no further questions. Therefore, the jury did not even consider whether any of Mr. Pataki's injuries or medical treatment was causally related to the fall. There is no indication that the jury considered Dr. Vizzone's qualifications, opinions, or financial interests in the outcome of the case whatsoever. The jury's sole consideration was whether Walmart was negligent, which has nothing to do with Dr. Vizzone's financial interests and relationship with Pataki's counsel. The jury reviewed the actual video of the incident and was properly instructed on the law.

Even assuming *arguendo* that unobjected statements of counsel in civil cases could be reviewed under the "plain error" standard, such as a clearly erroneous jury charge, the standard is rarely met. *Fashauer v. N.J. Transit Rail Operations*, 57 F.3d 1269, 1289 (3d Cir. 1995) (plain error review "is only appropriate in the civil context where the error is so serious and flagrant that it goes to the very integrity of the trial."). In civil trials, even where the issue is preserved, "'improper comments during closing arguments rarely rise to the level of reversible error[,]" *Meals v. Port*

*Auth. Trans-Hudson Corp.*, 622 F. App'x 121, 127 (3d Cir. 2015). In a case where the jury never reached the issue of damages, comments about the credibility of Pataki's medical providers certainly could not have affected the integrity of the trial.

Contrary to Appellant's Brief, counsel never referred to Pataki's counsel or doctors as "fraudsters" or claimed they were involved in a "conspiracy" without record evidence. *Appellant's Brief*, pp. 45, 47-48. Instead, counsel properly commented on the record, which included cross examination where Dr. Vizzone admitted his multiple financial interests:

> Q. But in this case, you have Dr. Vizzone as the individual doctor, Dr. Vizzone as a co-owner of the surgicenter and Dr. Vizzone as a co-owner of the Urgent Care center, correct?
> **A. Yes.**
> Q. And in addition, your partner, Mr. Mercadente, he was the owner of the MRI center, correct?
> **A. I believe he still is, yes.**
> Q. And all these bills that are being referred to each other were all guaranteed by Mr. DeZao, correct?
> **A. It's called a letter of protection. I don't think they're guaranteed. I think there is a letter of protection.**

ECF #206, 368:22-369:11. Dr. Vizzone admitted to these financial entanglements and that all of these bills, were guaranteed by Pataki's original attorney through a letter of protection and contingent upon the outcome of the case. *Id.* Dr. Vizzone failed to disclose any of these interests during his direct testimony and only admitted the connections after attempting to dodge various questions on this topic. ECF #206, 348:8-350:19.

Dr. Vizzone also admitted that he had a significant and close personal relationship with Pataki's first attorney. *Id.* at 385:8-14. Pataki testified that he was provided with courtesy vans to attend these various medical appointments from Brooklyn, which was inconsistent with his deposition testimony where he claimed a girlfriend drove him to appointments. *Id.* at 263:3-14. Pataki's original counsel, who attended the deposition and arranged for the vans, made no effort to correct or clarify this deposition testimony even though he clearly knew it was false and misleading. Walmart's counsel was permitted to comment upon an undisclosed attorney-directed network or "ring" of self-referring medical providers[1] who had a financial interest in the case, and a joint incentive to attribute the treatment to the incident. *Id.* at 365:17-370:8.

While Pataki claimed that Walmart's proofs undercut "a conspiracy to defraud" (*Appellant's Brief* at p. 49, n. 2), the original medical bills, $1,213,531 were more than four to five times what billing experts, including Pataki's expert, determined to be the usual customary, and reasonable charges. A66. At trial, either as a tactic or to preclude the jury's knowledge about the outrageous nature of his

---

[1] The American Medical Association's ("AMA") Code of Ethics 9.6.9 states: "In general, physicians should not refer patients to a health care facility that is outside their office practice and at which they do not directly provide care or services when they have a financial interest in that facility." Medical Ethics further state that "Physicians must not accept compensation that is contingent on the outcome of litigation." AMA Code of Ethics 9.7.1.

bills, Dr. Vizzone refused to testify that the overinflated bills from his own interrelated facilities were fair, reasonable, and related to the incident – and only $38,500 was introduced as the total value of the medical services. Pataki also failed to present the other providers to testify that their medical bills were fair, necessary and reasonable, which was a fair subject for comment in closing. ECF #208, 531:9-532:7. Defense witness, orthopedic surgeon Robert DeFalco, testified that Pataki had degenerative conditions in his spine, that the surgeries were unrelated and did not make sense given his symptoms, and that Plaintiff had no current restrictions. SA315-317, 74:21-76:16. Neither of the defense experts testified that any of the treatment that Dr. Vizzone's group provided was fair, reasonable, or causally related to the incident. *Id. See also*, *Trial Deposition of Michael L. Brooks, MD*, A1313, 31:18-32:9; A1316, 43:21-45:14.

Walmart's closing was consistent with the trial record and the jury was properly instructed that it could consider "whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice. ECF #208, 605:6-7. The jury was permitted to consider Pataki's counsel's significant relationship with Dr. Vizzone. The jury was permitted to consider Dr. Vizzone's financial interests in the case, and the fact that both Pataki and Dr. Vizzone provided inconsistent testimony and attempted to avoid answering certain questions about those interests. The jury was permitted to consider undisclosed referrals within commonly owned medical

practices. The jury was permitted to utilize their common sense and understand that Montclair, NJ medical providers do not generally send courtesy vans three days a week to transport patients to and from outer NYC boroughs for treatment. Walmart was permitted to argue inferences from this evidence.

After acknowledging that Walmart's counsel was doing his job in his closing and requesting leeway in his own closing (ECF #208, 543:17-23), Pataki's counsel crafted a *David versus Goliath* theme arguing that the Walmart "Goliath" had all the resources in the world to blame and mock "little David." *Id.* at 568:22-569:13; 570:14-20. Pataki's counsel argued that his client had no choice but to participate in his lawyer's medical ring because he was up against the biblical "Goliath." *Id.* at 574:3-16. This inflammatory closing resulted in Walmart's counsel requesting several curative instructions, which the district court gave. *Id.* at 587:15-596:6. Pataki's counsel made a strategic decision to waive any objections to the defense closing so that he could push the outer limits of advocacy in his own closing. Strategic decisions of counsel are not a subject of appellate review. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

## B. CONCLUSION

For the foregoing reasons, this Court should affirm the trial court's exclusion

of Birnbach's testimony and find no plain error regarding counsel's arguments.

Respectfully submitted,
**McDONNELL & ASSOCIATES, P.C.**

Dated: July 30, 2025          By:      */s/ Patrick J. McDonnell*
Patrick J. McDonnell, Esquire
Bar ID: PA 62310, NJ 026781991
Elisa M. Boody, Esquire
Bar ID: PA 319283, NJ 139842014
Metropolitan Business Center
860 First Avenue, Suite 5B
King of Prussia, PA 19406
*Attorneys for Appellees*

# CERTIFICATION OF BAR MEMBERSHIP

Patrick J. McDonnell, Esquire and Elisa M. Boody, Esquire, counsel for Walmart, hereby certify in accordance with Local Appellate Rules 28.3(d) and 46.1(e) that they are admitted to the Bar of the United States Court of Appeals for the Third Circuit.

**MCDONNELL & ASSOCIATES, PC**

*/s/ Patrick McDonnell*
Patrick J. McDonnell, Esquire
Attorney ID: PA 62310, NJ 026781991
Dated: July 30, 2025

*/s/ Elisa M. Boody*
Elisa M. Boody, Esquire
Attorney ID: No. PA 319283, NJ 139842014
Dated:  July 30, 2025

## CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure and the Local Rule of the United States Court of Appeals for the Third Circuit, Patrick J. McDonnell, Esquire, hereby certifies that the foregoing Brief complies with: (1) the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains <u>8709</u> words (excluding the cover page, tables, certificates, and the text of the relevant rules and statutes); and (2) the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared using Microsoft Word for Office 365 in a proportionally spaced 14-font typeface and Times New Roman typestyle.

MCDONNELL & ASSOCIATES, PC

Date: _7/30/2025_          _/s/ Patrick J. McDonnell_____
                          Patrick J. McDonnell, Esquire


## IDENTICAL COMPLIANCE CERTIFICATION

I, Patrick J. McDonnell, Esquire, hereby certify this 30th day of July, 2025, that the hard copy version and the e-filed version of the Brief are identical. The e-filed version was created by converting the finalized Word document into .pdf file.

MCDONNELL & ASSOCIATES, PC

Date: _7/30/2025_          _/s/ Patrick J. McDonnell_____
                          Patrick J. McDonnell, Esquire

# **VIRUS CHECK CERTIFICATION**

I, Patrick J. McDonnell, Esquire, hereby certify this 30th day of July, 2025, that a virus check was performed on the e-filed Brief by using the virus detection program, Vipre Virus Protection, version 3.1. This antivirus software automatically scans each file every time it is opened, saved, or sent.

MCDONNELL & ASSOCIATES, PC

Date:  7/30/2025

 */s/ Patrick J. McDonnell*
Patrick J. McDonnell, Esquire

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I, Melissa Pickett, hereby certify pursuant to Fed. R. App. P. 25(d) that, on July 30, 2025 the foregoing was filed through the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. The required copies have been sent to the court on the same date as above.

<u>/s/ Melissa Pickett</u>

Counsel Press